UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

JENNIFER RYAN,                              :
                                            :
                        Plaintiff,          :
            v.                              :     No. 5:15-cv-05044
                                            :
DELBERT SERVICES CORPORATION,               :
                                            :
                        Defendant.          :
_____

## MEMORANDUM OPINION
Defendant's Motion to Dismiss or Compel Arbitration, ECF No. 5 - Denied

**Joseph F. Leeson, Jr.**                                **September 8, 2016**
**United States District Judge**

    This case involves a dispute over whether Defendant Delbert Service Corporation violated federal or state law while attempting to collect on an internet payday loan that Plaintiff Jennifer Ryan borrowed. The matter at hand is whether Delbert may enforce either an arbitration clause or a forum selection clause in the loan agreement to compel Ryan to either submit to arbitration or bring her claims in a different forum. It may not.

**I.      Background**

    In 2012, Ryan obtained a payday loan for $2,525 over the internet from a company called Western Sky Financial, LLC.[1] The loan came with a startlingly high interest rate of 139.12%. Aside from the interest rate, the written loan agreement has a number of other unusual features. It contains a forum selection and choice of law provision that provides that the parties agreed to submit to "the sole subject matter and personal jurisdiction of the Cheyenne River Sioux Tribal Court" and that the agreement is governed "solely [by] the exclusive laws . . . of the Cheyenne River Sioux Tribe [of the] Cheyenne River Indian Reservation." If there was any doubt, the agreement makes clear that "no other state or federal law or regulation shall apply to [the agreement], its enforcement or interpretation."

---

[1] A copy of the loan agreement is attached as Exhibit A to Delbert's motion. While Ryan did not include a copy of the agreement with her complaint, the agreement forms the basis of this case, no one disputes its authenticity, and both sides argue over the meaning and effect of its terms, so it may be considered without converting Delbert's motion into one for summary judgment. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." (quoting *In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993))).

The agreement also contains an arbitration clause that applies to "any controversy or claim between [Ryan] and Western Sky or the holder or servicer of the [loan]," including any claim based on "the handing and servicing of [the borrower's] account" as well as "any issue concerning the validity, enforceability, or scope of [the] loan or the Arbitration agreement." Picking up where the forum selection and choice of law provisions left off, the arbitration clause provides that the arbitration "shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules"—though the agreement goes on to state that Ryan would have the right to select either the American Arbitration Association or JAMS to "administer the arbitration."[2] The clause goes on to state that "[t]he arbitrator will apply the laws of the Cheyenne River Sioux Tribal Nation" and will not apply "any law other than the law of the Cheyenne River Sioux Tribe of Indians."

The explanation for these provisions is that Western Sky, according to the agreement, is "a lender authorized by the laws of the Cheyenne River Sioux Tribal Nation and the Indian Commerce Clause of the Constitution of the United States of America."

Ryan claims that the interest rate she is being charged violates Pennsylvania law, but she is not suing Western Sky. Rather, Ryan is targeting Delbert, which has been attempting to collect on the loan. *See* Am. Compl. ¶ 14. She claims that by attempting to collect on a loan that violates Pennsylvania law—and by making false statements to her about her obligation to repay the loan—Delbert violated federal and state law.

Delbert contends that Ryan must arbitrate these claims. Because the arbitration clause applies to "any controversy or claim" Ryan might have against not only Western Sky but also "the holder or servicer" of the loan, including any claims based on "the handling and servicing" of Ryan's account, Delbert asserts that Ryan must arbitrate. Ryan contends that this arbitration clause is unenforceable,[3] but because the clause provides that even disputes over "the validity, enforceability, or scope" of the arbitration agreement must be arbitrated, Delbert contends Ryan must arbitrate that issue too. Even if some or all of Ryan's claims are found to not be subject to arbitration, Delbert claims that they cannot be brought here. Because of the loan agreement's forum selection clause, Delbert contends that the proper place for Ryan's claims is the Cheyenne River Sioux Tribal Court. At the very least, Delbert asserts that Ryan must exhaust that option first before bringing her claims here because of the doctrine of "tribal exhaustion."

These arguments cover well-trodden ground. Western Sky and its loan servicers have been subject to a "stream of private litigation and public enforcement actions" over high-interest payday loans. *See Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 669 (4th Cir. 2016). In *Hayes*, the Fourth Circuit rejected each of the arguments that Delbert is making now to avoid facing Ryan's

---

[2] As more than one court has observed, reconciling those two provisions "presents a 'conundrum.'" *See Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 673 (4th Cir. 2016) (quoting *Heldt v. Payday Financial, LLC*, 12 F. Supp. 3d 1170, 1191 (D.S.D. 2014)).

[3] Initially, Ryan seemed to be of the belief that she could not challenge the enforceability of the arbitration clause, *see* Pl.'s Mem. Opp'n 7 n.4, ECF No. 8, but she later urged the Court to follow the decisions of other courts that have found Western Sky's arbitration clause to be unenforceable, *see* Pl.'s Sur-reply, ECF No. 23.

claims. Following *Hayes*, these same arguments were rejected again by this Court. *See Smith v. Western Sky Fin., LLC*, No. 15-3639, 2016 WL 1212697 (E.D. Pa. Mar. 4, 2016), *appeal dismissed* (3d Cir. Apr. 19, 2016). Both courts concluded that this arbitration clause is unenforceable, and both courts concluded that neither the forum selection clause in the loan agreement nor the doctrine of tribal exhaustion required the borrowers to bring their claims in tribal court. *See Hayes*, 811 F.3d at 676 & n.3; *Smith*, 2016 WL 1212697, at *4-6.[4]

Both opinions are well reasoned, and the Court adopts their reasoning here. However, one topic that *Hayes* and *Smith* discussed in passing warrants a closer examination: whether this Court may determine if the arbitration clause is enforceable, or whether, under the terms of the loan agreement, that is an issue that Ryan must present to an arbitrator. *See Hayes*, 811 F.3d at 671 n.1; *Smith*, 2016 WL 1212697, at *7.

II.     **The Court may determine the validity of the arbitration clause because the delegation provision in the loan agreement is unenforceable.**

The notion that Ryan could be forced to arbitrate her contention that she is not bound by the arbitration clause (often referred to as a dispute over "arbitrability") is counterintuitive, but in effect it is no different from the principle that a party who objects to a particular court's jurisdiction must make that argument to that court. Many arbitration organizations, such as the American Arbitration Association, provide in their rules that an arbitrator has "the power to rule on his or her own jurisdiction."[5]

But unlike judicial jurisdiction, arbitration is a matter of contract, and so whether a particular issue must be arbitrated depends upon whether the two parties agreed to arbitrate it. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Because it would likely surprise a party to learn that they may be forced to submit to arbitration even if they contend that the arbitration clause is invalid, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Id.* (alterations in original) (quoting *AT & T Techs. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

The arbitration clause at issue here expressly provides that any dispute over "the validity, enforceability, or scope of . . . the Arbitration agreement" shall be resolved through arbitration. Courts often find that when a written agreement contains one of these so-called delegation provisions, that amounts to clear and unmistakable evidence that the parties intended that they would arbitrate threshold disputes over the arbitration clause's own validity. *See, e.g.*, *Parnell v.*

---

[4]     *Haynes* and *Smith* resolved the latter two arguments on slightly different grounds. In *Haynes*—as in this case—the plaintiff sued only Delbert, not Western Sky, and the court held that Delbert, as a third party to the loan agreement, could not enforce the forum selection clause. *See* 811 F.3d at 676 n.3. Delbert also could not invoke the tribal exhaustion doctrine because it is not an Indian-owned entity, and the plaintiff's claims involved only Delbert's efforts to collect on the loan, not the origination of the loan with Western Sky. *Id.* In *Smith*, the plaintiff sued both Delbert and Western Sky, so the court had to directly confront the validity of the forum selection clause and the merits of the tribal exhaustion doctrine. The court rejected both after finding that there was no colorable basis to believe that the Cheyenne River Sioux Tribe would have jurisdiction over claims like these. *See* 2016 WL 1212697, at *4-5. Here, Ryan has sued only Delbert, so its arguments would fail under either court's approach.

[5]     Am. Arbitration Ass'n, *Consumer Arbitration Rules* 17 (Sept. 1, 2016), http://www.adr.org/consumer.

3

*CashCall, Inc.*, 804 F.3d 1142, 1147 (11th Cir. 2015). Assuming that is correct,[6] that suggests that Ryan must take her arguments about the arbitration clause's validity to arbitration.

However, no arbitration agreement—including an agreement to arbitrate threshold arbitrability disputes—may be enforced if the agreement is invalid under "grounds [that] exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2; *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). That means that a party may challenge the validity of a delegation provision like this one and will not be bound by it if the clause is unenforceable under ordinary contract law principles. *See Rent-A-Center*, 561 U.S. at 71-72. The key, however, is that the party must show that the delegation provision itself is unenforceable, not just that the delegation provision is part of an arbitration clause (or larger contract) that cannot be enforced. *See id.* at 72. This is so because a delegation provision is treated as a "mini-arbitration agreement" of its own, *id.* at 85 (Stevens, J., dissenting), and under the Federal Arbitration Act, "an arbitration provision is severable from the remainder of the contract." *See id.* at 70-71 (majority opinion) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006)).

As the Fourth Circuit concluded in *Hayes*, there is little question that the overall arbitration clause, which contains the delegation provision, is unenforceable. According to the loan agreement, the arbitrator who would hear Ryan's claims would only "apply the laws of the Cheyenne River Sioux Tribal Nation." That means that her claims against Delbert under the Fair Debt Collection Practices Act, *see* Am. Compl. ¶¶ 30-31, would automatically fail, and that cannot be done. An arbitration clause that "purports to renounce wholesale the application of any federal law to [a plaintiff's] federal claims . . . is simply unenforceable." *See Hayes*, 811 F.3d at 673-74. While parties have "the freedom to structure arbitration in the way they choose," which can include imposing procedural requirements that may make it more difficult for a party to pursue a claim, one party cannot prevent another "from effectively vindicating her federal

---

[6] An argument can be made that a delegation provision like this one, scattered among other contract boilerplate, is not the sort of "clear and unmistakable" evidence that *First Options* requires. While a party who signs a boilerplate contract is generally deemed to have assented to all the terms that lie within—even those "terms not read or not understood"—that is not the case for "unknown terms which are beyond the range of reasonable expectation." Restatement (Second) of Contracts § 211 cmts. b, f (Am. Law Inst. 1981). While parties are free to make agreements with unusual or unreasonable terms, merely pointing to them among paragraphs of boilerplate is not enough to show that the other party in fact agreed to them. *See Germantown Mfg. Co. v. Rawlinson*, 491 A.2d 138, 146 (Pa. Super. Ct. 1985) ("The parties will not be found to have agreed to an abnormal allocation of risks if the only evidence thereof is an inconspicuous provision in the boilerplate of the standard form."). *First Options* recognized that agreements to arbitrate threshold arbitrability disputes are "rather arcane" and something that parties "often might not focus upon" ahead of time, which is why the Court required any party seeking to enforce such an agreement to make a heightened showing—proof by clear and unmistakable evidence—that the other party actually agreed to it. That suggests that a boilerplate delegation provision may not be enough to make that showing. This is not because a delegation provision in a consumer contract would be invalid, like a term in a contract that is unconscionable or against public policy, but rather because a delegation provision slipped into the boilerplate may "not [be] part of the agreement" at all. *See* Restatement (Second) of Contracts § 211(3); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010) (observing that the *First Options* rule is not concerned with the "*validity* of a written agreement to arbitrate" but rather with "whether [the agreement] was in fact agreed to").

statutory rights." *Id.* at 674 (quoting *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2311 (2013)). This principle is a "judge-made exception to the [Federal Arbitration Act]," which "finds its origin in the desire to prevent 'prospective waiver of a party's right to pursue statutory remedies.'" *Am. Express Co.*, 133 S. Ct. at 2310 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)). Here, under the guise of choosing the law that would govern any arbitration proceedings between the parties, the arbitration clause "flatly and categorically renounce[s] the authority of the federal statutes to which it is and must remain subject," effectively turning its choice of law clause "into a choice of no law clause." *Hayes*, 811 F.3d at 675. The inescapable conclusion is that this arbitration clause was not intended to be "a just and efficient means of dispute resolution" but rather a means "to avoid state and federal law and to game the entire system." *Id.* at 676.

*Hayes* convincingly demonstrates why the arbitration clause is unenforceable, but the fact that the arbitration clause cannot be enforced does not necessarily mean that the delegation clause contained in the arbitration clause is unenforceable as well. Under *Rent-A-Center*, the delegation provision must be severed from the arbitration provision and considered on its own merits, free from any defect that may taint the larger arbitration clause or the contract as a whole. Unless there are grounds to find that the delegation provision, specifically, is invalid, it must be enforced, which would mean that it should have been for an arbitrator to decide whether or not the arbitration clause is enforceable. *See Rent-A-Center*, 561 U.S. at 74.[7]

Ryan urges the Court to follow the reasoning of *Smith*, which found the delegation provision to be "equally illusory" as the arbitration clause and refused to enforce it.[8] *See* 2016 WL 1212697, at *7. The Court agrees. At first glance, there would not seem to be any inherent problem with requiring Ryan to argue the enforceability of the arbitration clause to an arbitrator. Arbitrators are capable of resolving all sorts of disputes, including matters of great importance like claims under the federal civil rights statutes, *see Hayes*, 811 F.3d at 674, and there is no reason to believe that an arbitrator would not be competent to examine precedents like *Hayes* and

---

[7] *Haynes* recognized the rule of *Rent-A-Center*, *see* 811 F.3d at 671 n.1, but did not go on to discuss the validity of the delegation provision separately from the validity of the arbitration clause as a whole.

[8] By specifically asking the Court to follow *Smith*, which refused to enforce the delegation provision, the Court finds that Ryan has "challenged the delegation provision specifically." *See Rent-A-Center*, 561 U.S. at 72. *See* Notice of Suppl. Authority, ECF No. 25. In *Parnell*, the Eleventh Circuit turned away a challenge to this same arbitration clause because the plaintiff "only challenge[d] the arbitration provision generally" and did not "challenge the delegation provision directly." *See* 804 F.3d at 1148-49. Curiously, *Parnell* described the *Rent-A-Center* rule as a "pleading requirement" and advised that if the plaintiff wished to challenge the delegation provision, he needed to "seek leave from the district court to amend his complaint to reflect a proper challenge to the delegation provision." *See id.* However, *Rent-A-Center* "did not create a pleading rule whereby the plaintiff must plead a separate and distinct challenge to the arbitration clause [or delegation clause]" in the complaint. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1001 (9th Cir. 2010). The topic of arbitration usually does not arise until a defendant moves to compel arbitration after the suit is filed, *see* 9 U.S.C. § 3, at which time the plaintiff may then address the validity of the delegation clause in a brief. *See Rent-A-Center*, 561 U.S. at 73. Since *Parnell*, the Eleventh Circuit has clarified that in fact it does not require a plaintiff to challenge a delegation provision in the complaint, and that a plaintiff may do so in an opposition to a motion to compel arbitration. *See Parm v. Nat'l Bank of Cal., N.A.*, No. 15-12509, 2016 WL 4501661, at *3 n.1 (11th Cir. Aug. 29, 2016).

the authorities *Hayes* relied upon to determine the validity of the arbitration clause. The problem is that under the loan agreement, the arbitrator would not be allowed to rely on any of those things. *See Smith*, 2016 WL 1212697, at *7 ("In practical terms, enforcing the delegation provision would place an arbitrator in the impossible position of deciding the enforceability of the agreement *without* authority to apply any applicable federal or state law."). The arbitrator would be expressly forbidden from relying on any federal or state law, which means that the arbitrator could not ask whether the arbitration clause—and its complete exclusion of federal law—would violate the federal public policy against arbitration clauses that "operat[e] . . . as a prospective waiver of a party's right to pursue statutory remedies." *See Am. Express Co.*, 133 S. Ct. at 2310 (quoting *Mitsubishi Motors*, 473 U.S. at 613 n.19). Quite possibly, the arbitrator would uphold the arbitration clause, because there would be no principle of federal law standing in the way. Enforcing the delegation clause would effectively allow Delbert to subvert federal public policy and deny Ryan the effective vindication of her federal statutory rights before the arbitration of her claims even began.

       The wholesale waiver of federal and state law thus dooms both the delegation provision and the arbitration clause, but for different reasons. *See Rent-A-Center*, 561 U.S. at 74 (recognizing that the same arbitration procedures that render an overall arbitration clause invalid may also render a delegation provision invalid when applied to that provision). As applied to the larger arbitration clause, the "choice of no law clause" would "preclude [Ryan] from effectively vindicating her federal statutory rights" under the Fair Debt Collection Practices Act. *See Hayes*, 811 F.3d at 674 (quoting *Am. Express Co.*, 133 S. Ct. at 2311). As applied to the delegation provision, it would prevent Ryan from challenging the validity of "an arbitration agreement [that] forbid[s] the assertion of [her] statutory rights," *see id.* at 675 (quoting *Am. Express Co.*, 133 S. Ct. at 2310), effectively allowing Delbert to insulate an unenforceable arbitration clause from attack.

       Besides being invalid under federal law, the delegation provision is unenforceable as a matter of basic contract law principles. The delegation provision is obscured among ten paragraphs of boilerplate that make up the arbitration clause, and the arbitration clause itself is only one part of the four pages of boilerplate in the loan agreement. Of course, boilerplate in consumer contracts is routinely enforceable—modern commerce depends upon it, *see Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 600 (1991) (Stevens, J., dissenting)—and when a "condition [is] reasonable [and] the notice adequate," the term usually will be enforced. *See Klar v. H. & M. Parcel Room*, 61 N.Y.S.2d 285, 293 (N.Y. App. Div. 1946) (Dore, J., dissenting), *aff'd*, 73 N.E.2d 912 (N.Y. 1947). But that does not mean that any term a party may slip into a ream of boilerplate is enforceable, and the delegation provision is boilerplate at its most pernicious. A person who takes out a payday loan would not expect that they may be stripped of all of their applicable federal and state rights, and that the person who will decide whether or not that arrangement is valid will be an arbitrator who will apply only the law of the Cheyenne River Sioux Tribe of South Dakota. Even if the borrower read the delegation provision, the borrower

would be unlikely to understand its full implications because they only become clear in light of the interaction between the delegation provision, the arbitration clause, and the choice of law provision. Whether the delegation provision is characterized as unconscionable, *see Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119-20 (Pa. 2007), outside of the parties' "circle of assent," *see Curtis v. Ryder TRS Inc.*, 43 F. App'x 103, 105-07 (9th Cir. 2002), or an "unknown term[] which [was] beyond the range of reasonable expectation," *see* Restatement (Second) of Contracts § 211 cmt. f (Am. Law. Inst. 1981), it is unenforceable.[9]

### III. Conclusion

The delegation provision in loan agreement is unenforceable, which means that the Court can proceed to determine whether Delbert can enforce the arbitration clause and compel Ryan to arbitrate her claims. As *Hayes* and *Smith* concluded, it cannot. Nor can Delbert require her to litigate her claims in the Cheyenne River Sioux Tribal Court. Accordingly, Delbert's Motion is denied. An appropriate order follows.

---

[9] Applying Pennsylvania's approach may be appropriate because that is where Ryan lived when she borrowed the loan and presently resides, and the parties have not presented any competing rules of contract interpretation from the Cheyenne River Sioux Tribe or elsewhere. *See Parnell*, 804 F.3d at 1147. Regardless, this conclusion is clear as a matter of basic contract principles. *See id.*